Jaburg & Wilk, P.C.
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
(602) 248-1000

Alden A. Thomas (#031900)
aat@jaburgwilk.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Lauren Botti, ,<br><br>   Plaintiff<br><br>vs.<br><br>Flagstaff Arts and Leadership Academy, Inc. a political subdivision of the State of Arizona, and Kyle Winfree, the former Vice President of the Board of Directors of Flagstaff Arts and Leadership Academy, Inc.<br><br>   Defendants | Case No.<br><br>**COMPLAINT** |

Plaintiff Lauren Botti alleges:

## PARTIES, JURISDICTION, AND VENUE

1.   Plaintiff Lauren Botti is an individual residing in Coconino County, Arizona.

2.   Defendant Flagstaff Arts and Leadership Academy, Inc. ("FALA") is an Arizona corporation doing business in Coconino County, Arizona.

3.   FALA operates a public charter school in Flagstaff, Arizona ("the School") and is a political subdivision of the State of Arizona.

4.   FALA is governed by a Board of Directors ("the Board").

5. Upon information and belief, Defendant Kyle Winfree is an individual residing in Coconino County, Arizona.

6. At all relevant times, Winfree served as the Vice President of the Board.

7. Upon information and belief, each of the Defendants were, at all relevant times, the agent, employee, representing partner, parent company, subsidiary, and/or joint venture of the other Defendants, and such Defendants were acting within the course and scope of that relationship.

8. Upon information and belief, each of the Defendants consented to, ratified, and/or authorized the acts of all other Defendants, as alleged herein.

9. Defendant Winfree is sued in both his individual and official capacities.

10. Defendants are jointly and severally liable for Botti's injuries and damages.

11. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

12. Venue is proper in this Court because the acts and omissions giving rise to Plaintiff's claims occurred in Coconino County, Arizona.

**GENERAL ALLEGATIONS**

13. As set forth herein, at all relevant times, FALA had policies, practices, and/or customs of retaliating against FALA teachers, parents, and/or taxpayers for expressing concerns about decisions the Board made on behalf of FALA, resulting in violations of their right to free speech under the First Amendment of the United States Constitution.

14. At all relevant times, Defendants were in positions of total control and authority in effectuating FALA's practices, policies, and customs.

15. In February 2022, Botti began working at FALA as a teacher.

16. At all relevant times, Botti had two children enrolled at FALA and was an active member of the FALA parent community.

2

23233-23233-00001\AAT\\5842822v1

17. On October 21, 2022, the Board issued an agenda for its upcoming meeting on October 24, 2022 that included the following as action items:

    A. "Discussion and possible action regarding formal or informal disciplinary or corrective action against Executive Director Eli Cohen. (*Possible executive session per A.R.S. 38-431.03(A)(1) (personnel) and A.R.S. 38-431.03(A)(3) (advice from legal counsel)."

    B. "Discussion and possible action regarding formal or informal disciplinary or corrective action against Exceptional Student Services Director Christina Wolfe. (*Possible executive session per A.R.S. 38-431.03(A)(1) (personnel) and A.R.S. 38-431.03(A)(3) (advice from legal counsel)."

18. Botti believed the Board included these actions items on the public agenda as a deliberate attempt to wrongfully target and publicly humiliate Cohen and Wolfe, members of FALA's then leadership team, who had previously publicly expressed concerns about the Board's conduct.

19. The Board's retaliatory actions concerned Botti as a teacher, parent, and taxpayer/citizen.

20. On October 23, 2022, Botti wrote a letter to the Board. Among other things, she expressed concerns regarding the Board's failure to place the needs of FALA's students first, attempts to publicly humiliate its dissenters, and attempts to censor Botti's speech at the upcoming public Board meeting.

21. Botti did not make such statements pursuant to her official duties as a FALA employee.

22. The Board was dismissive of Botti and the others who raised concerns in the October 24, 2022 Board meeting and in subsequent Board meetings. Indeed, one of the Board members referred to the group of teachers and parents expressing concerns as a "mob."

3

23. Botti attempted to raise her concerns after the October Board meeting, the Board refused to hear her complaints and told her to submit complaints through the procedures in the employee handbook.

24. Botti was not required to make statements at Board meetings pursuant to her official duties as a FALA employee.

25. The Board's conduct was improper as Botti attempted to voice her concerns not only as a FALA employee, but also as a FALA parent and taxpayer.

26. Nevertheless, on November 29 and 30, 2022, Botti emailed the Board to lodge a formal complaint about its abuse of its authority.

27. Although Botti was understandably concerned that the Board would retaliate against her for making her complaints (as it had with Cohen and Wolfe), those concerns were outweighed by her greater concerns about the welfare of FALA's students, teachers, parents, and other concerned citizens.

28. In November and December 2022, tensions between the Board and the FALA community continued to escalate.

29. On or about December 14 and 15, 2022, Botti, along with over a dozen other individuals, asked three of the FALA Board members to resign, including Winfree.

30. In retaliation, the Board became outright hostile to Botti and other FALA employees.

31. As a result, multiple FALA employees began resigning in December 2022.

32. On December 15, 2022, the then Board President sent a mass email to the FALA community announcing that the Board had chosen to reassign Cohen to complete his duties remotely.

33. On the same day, Botti emailed the Board, "This decision has put our community in grave danger. With recent resignations brought on by the board's actions, we now do not have enough hands on deck. No amount of awesome professionalism, heart, and desire can make up for a lack of expertise and physical people."

23233-23233-00001\AAT\\5842822v1

34. On December 22, 2022, Winfree retaliated against Ms. Botti by accusing her of conspiring with other FALA employees who reported concerns to the Board (or otherwise publicly objected to its conduct) of conspiring to kidnap his child.

35. As documented in the corresponding police report, Winfree alleged that "someone" posed as his wife and called FALA in an attempt to kidnap his daughter from school notwithstanding the fact that his daughter was at home during the alleged incident.

36. In retaliation for exercising their First Amendment right to free speech, Winfree falsely reported Botti (and other FALA employees who raised concerns to the Board) as potential suspects in the alleged kidnap plot.

37. Upon information and belief, Winfree reported Botti as an alleged suspect in the police report, in part, because she raised concerns to the FALA Board, including calling for Winfree's resignation.

38. Upon information and belief, Winfree engaged in such conduct in his capacity as a Board member.

39. Alternatively, he engaged in such conduct in his individual capacity.

40. Botti never conspired to kidnap Winfree's child.

41. Nevertheless, because of Winfree's actions, she was needlessly subjected to a police investigation.

42. The police concluded there was no evidence anyone ever attempted to kidnap Winfree's child.

43. Nevertheless, Winfree shared his defamatory allegations about Botti to that effect with other parties in the FALA community.

44. Botti did not become aware of this until 2023.

45. On or around January 29, 2023, another FALA faculty member began harassing Botti and insisting that she meet with Winfree to discuss the allegations he made against her.

46. Before this date, Botti had no reason to believe that Winfree had shared his defamatory allegations about Botti with her colleagues; Winfree reported Botti to the police while the School was closed for winter break.

47. Winfree reported Botti to the police and made defamatory statements about her allegedly conspiring to commit a felony, in part, to chill or silence her from exercising her right to free speech.

48. Winfree's desire to chill Botti's exercise of her free speech rights was the but-for cause of his actions.

49. Winfree's actions were fueled by a retaliatory motive.

50. Winfree's defamatory statements materially damaged Botti's reputation as an educator and upstanding member of her community.

51. Winfree's defamatory statements also humiliated Botti and caused her to suffer from severe emotional distress.

52. Winfree has since admitted he accused Botti (and others who reported concerns to the Board) of conspiring to kidnap his child because he was "grasping at straws" and he "provided names that came to mind based on who I think disliked me the most."

53. He has also admitted to Botti that he did not believe she would kidnap a child.

54. Nevertheless, Winfree has never recounted the defamatory statements he made about Botti to the third parties with whom he shared such statement.

55. Furthermore, he has refused to apologize and publicly acknowledge the accusations he made against Botti were baseless and defamatory.

56. Despite Botti's repeated requests that Winfree stop attempting to contact her, Winfree used his position as a Board member to order FALA staff members to repeatedly harass Botti on his behalf.

6

57. Among other things, staff members repeatedly harassed Botti and insisted that she meet with Winfree privately even though she made clear she had no desire to do so.

58. Due to the stress of the ongoing retaliation and harassment, Botti was forced to utilize sick time to cope with the stress and turmoil.

59. Botti also began to suffer from anxiety and depression as a consequence of FALA and/or Winfree's conduct.

60. In February 2023, Botti testified in favor of Cohen during an administrative hearing.

61. Among other things, Botti testified about her observations of the retaliatory conduct FALA subjected Mr. Cohen to.

62. She also testified about statements Kara Kelty, FALA's School Improvement Specialist, made to her that she later discovered were false.

63. On or around, March 1, 2013, Botti served a notice of claim to the Board, including Winfree. The Notice of Claim asserted claims under 42 U.S.C. § 1983, defamation, and intentional infliction of emotional distress.

64. FALA and/or Winfree in his individual capacity continued retaliating against Botti for exercising her free speech rights.

65. On March 20, 2023, Kelty emailed Botti and falsely represented she lacked the requisite credentials to teach high school because she lacked "24 credit hours in the subject content."

66. Kelty also demanded that Botti send a letter to all FALA parents to disclose she lacked the requisite certifications to teach high school students pursuant 34 CFR § 200.61.

67. Of course, this regulation applies only to Title I schools.

68. At all relevant times, Kelty was aware FALA was not a Title I school and that Botti was qualified to teach at FALA.

7

23233-23233-00001\AAT\\5842822v1

69. Upon information and belief, Kelty's directive to Botti was simply another example of FALA's blatant attempts to harass, threaten, embarrass, and humiliate Botti in retaliation for voicing concerns to the Board and/or testifying in support of others who have experienced retaliation.

70. Kelty further retaliated by refusing to grant Botti's request to utilize paid sick time.

71. At all relevant times, Kelty's retaliatory actions against Botti were taken at the direction of the Board and/or Winfree in his individual capacity.

72. Due to the ongoing retaliation Botti endured at the hands of the Board, and/or Winfree in his individual capacity, she submitted a Notice of Constructive Discharge to FALA on or around March 31, 2023.

73. As Defendants refused to rectify their actions, Botti was constructively discharged from her employment.

74. Botti has continued to suffer ongoing emotional distress and loss of enjoyment of life due to Defendants' conduct, as alleged herein.

75. Defendants conduct has adversely impacted Botti and her reputation so substantially that she is no longer an educator.

**COUNT ONE**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 1983**
(Against all Defendants)

76. Botti incorporates by reference all above allegations as though fully set forth herein.

77. Under 42 U.S.C. § 1983 ("Section 1983"):

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

8

78. FALA is a political subdivision of the State of Arizona.

79. The FALA Board and Winfree, in his individual capacity, are "persons" subject to liability under Section 1983.

80. At all relevant times, Defendants were key decision makers in positions of total control and authority in effectuating FALA's practices, policies, and customs. Their decisions abridged and contravened Botti's rights under color of state law.

81. Section 1983 incorporates the free speech rights set forth in the First Amendment.

82. Defendants, acting under color of state law, repeatedly retaliated against Botti for exercising her constitutional right to free speech.

83. As set forth herein, Botti engaged in a constitutionally protected activity when she, among other things, repeatedly expressed her concerns to the Board and testified at an administrative hearing.

84. As a result, Defendants subjected Botti to adverse actions that would chill a person of ordinary firmness from continuing to engage in such a protected activity. Among other things, Winfree falsely accused Botti of conspiring to commit a felony, harassed her, etc.

85. The Board and/or Winfree also took steps to censor Botti at public Board meetings.

86. Defendants also humiliated Botti by for exercising her free speech right by, among other things, instructing Kelty to unjustifiably demand that Botti notify all parents claiming she was not qualified for her position, decline her requests for paid sick time, etc.

87. Defendants' actions ultimately led to Botti's constructive discharge from FALA.

88. There was a substantial causal relationship between Botti's constitutionally protected activities and the Defendants' adverse actions against her.

89. Defendants' actions have caused Botti to suffer damages, including but not limited to, significant emotional distress, mental anguish, pain and suffering, loss of enjoyment of life, etc.

90. Defendants' actions and inactions involved reckless or callous indifference to the Plaintiff's federally protected rights and warrant punitive damages.

## COUNT TWO
## DEFAMATION
## (Against all Defendants)

91. Botti repeats and realleges each allegation if this Complaint as is fully set forth in this claim.

92. At all relevant times, Winfree was FALA's agent such that FALA may be held vicariously liable for his actions.

93. Alternatively, to the extent Winfree's actions were not taken in his capacity as FALA's agent, he may be held liable in his individual capacity.

94. By his actions described herein, Winfree published, through various means, statements, insinuations, and innuendo to third persons, including without limitation, Botti's peers and other members of the community, allegations that Botti conspired to kidnap his child.

95. All such statements, insinuations and innuendo alleged herein were false and defamatory, bringing Botti into disrepute, contempt or ridicule.

96. No such statement, insinuation or innuendo was privileged.

97. Winfree published all such statements, insinuations and innuendo knowing that they were false, with reckless disregard of the truth, or negligently in failing to investigate and ascertain the truth.

98. Each such statement, insinuation and innuendo alleged herein, singularly or in combination, has impeached and continues to impeach the honesty, integrity and reputation of Botti.

99. FALA is liable for such damages.

100. Alternatively, Winfree is liable for such damages.

101. Winfree published such statements, insinuations and innuendo with actual malice and a deliberate indifference or recklessness as to the truth or falsity of any such statement, insinuation, or innuendo for the specific purpose of damaging Botti's good name, standing and reputation in the community.

102. As such Botti is entitled to an award of punitive damages in an amount sufficient to punish FALA and/or Winfree and deter others from engaging in the same or similar conduct.

103. As a direct and proximate result of Winfree's conduct, Botti has been damaged as she has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to her reputation, and loss of enjoyment of life.

**COUNT THREE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(Against all Defendants)

104. Botti incorporates by reference all above allegations as though fully set forth herein.

105. FALA, through its agents as described herein, engaged in conduct against Botti that was extreme and outrageous.

106. At all relevant times, Winfree was FALA's agent such that FALA may be held vicariously liable for his actions.

107. Alternatively, to the extent Winfree's actions were not taken in his capacity as FALA's agent, he may be held liable in his individual capacity.

11

108. Among other things, Winfree knowingly and falsely publicly accused Botti of conspiring to kidnap his child, a felony.

109. Winfree shared such allegations with the police to subject Botti to an unwarranted police investigation.

110. He also shared such allegations to Botti's peers and others in the community with the express intent of humiliating Botti and/or causing her severe emotional distress.

111. The Board also directed Kelty, a FALA agent, to order Botti to inform all parents at FALA that she was not qualified for her position.

112. Kelty knew this statement was false and presumably made this directive to Botti for the express purpose of humiliating her and/or causing her severe emotional distress.

113. Defendants engaged in such outrageous conduct intentionally and/or with reckless disregard for the near certainty that such distress would result from such conduct.

114. Through the acts and omissions described herein, Defendants' actions went beyond mere callousness or insensitivity, particularly because FALA, its agents, and or Winfree in his individual capacity knew that the allegations made Botti's alleged criminal activities and lack of credentials were false.

115. Defendants also knew that Botti was susceptible to suffering from emotional distress as she repeatedly requested to utilize her sick time to treat her depression and anxiety, which FALA denied.

116. Nevertheless, Defendants continued to engage in outrageous conduct, as set forth herein, until Botti was constructively discharged from her employment.

117. Botti has suffered, and continues to suffer, severe emotional distress as a result of Defendants' outrageous actions.

118. Defendants acted with malicious intent such that an award of punitive damages is warranted.

**January**

119.  Botti requests a jury trial on all claims set forth herein.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Lauren Botti requests a judgment against Defendants as follows:

A.  For compensatory damages in an amount to be proven at trial;

B.  For consequential damages;

C.  For an award of punitive damages to punish and deter future similar conduct;

D.  For prejudgment interest at the highest legal rate from the date due until the date of judgment;

E.  For reasonable attorneys' fees and costs as allowed by statute, including 42 U.S.C. § 1988;

F.  For costs;

G.  For interest on the foregoing amounts at the highest legal rate from the date of Judgment until paid; and

H.  For entry of an order declaring Defendants' acts and practices complained of herein were in violation of 42 U.S.C. § 1983 and Arizona law; and

I.  For such other and further relief as is proper and just.

**DATED** this 29th day of January, 2024

**JABURG & WILK, P.C.**

*/s/ Alden A. Thomas*
Alden A. Thomas (#031900)
aat@jaburgwilk.com
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004

Attorney For Plaintiff

13

23233-23233-00001\AAT\\5842822v1